IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

DANIEL ELDRIDGE                                                                                          PLAINTIFF
ADC #175259

v.                                        3:20-cv-00335-LPR-JJV

DEXTER PAYNE, Director, ADC, *et al.*                                                        DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Lee P. Rudofsky.  Any party may serve and file written objections to this recommendation. Objections should be specific and include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation.    Failure to file timely objections may result in a waiver of the right to appeal questions of fact. Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

**I.      INTRODUCTION**

Daniel Eldridge ("Plaintiff") is a prisoner in the Grimes Unit of the Arkansas Division of Correction ("ADC").  He has filed a *pro se* Amended Complaint pursuant to 42 U.S.C. § 1983 alleging Deputy Warden Kenny Davis, Major Lewis Young, Law Library Clerk Myra Glass, and Sergeant John Moss violated his First Amendment right to freely exercise his religious beliefs

1

when they refused to allow him to receive a copy of *The Strongest Strong's* concordance.[1] (Doc. 4.)

Defendants have filed a Motion for Summary Judgment arguing Plaintiff's claim must be dismissed without prejudice because he failed to exhaust his administrative remedies. (Docs. 23, 24, 25.) Plaintiff has filed a Response. (Doc. 26.) After careful consideration and for the following reasons, I recommend the Motion be GRANTED and Plaintiff's claims be DISMISSED without prejudice.

**II.   SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d

---

[1] All other claims and Defendants were dismissed without prejudice during screening mandated by 28 U.S.C. § 1915A. (Doc. 13.)

672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.   ANALYSIS

#### A.   The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

#### B.   Publications Policy GU 16.5.0

The Grimes Unit's Publications Policy, GU 16.5.0, establishes the reasons a publication may be rejected and the procedure for challenging a rejection. (Doc. 23-2.) In particular, GU

16.5.0 § V(M) says hardback books thicker than two inches or any book weighing more than three pounds may be rejected. (*Id*. at 3) If such a book is received, the Mailroom Supervisor sends it to the Publication Review Committee, which consists of Defendants Davis, Young, Glass, Moss. (*Id.*) The Committee makes a recommendation to the Warden, who decides whether to accept or reject the publication. (*Id.*) If the publication is rejected, the Mailroom Supervisor sends a Publication Review Results Form to the prisoner explaining the reason for the rejection and giving the prisoner the option to: (1) appeal the rejection; (2) have the book destroyed; (3) return the publication to the sender at the prisoner's expense; (4) mail the publication to the third party at the prisoner's expense; or (5) give the publication to a third party during visitation. (*Id.* at 4-5.) The prisoner has ten days working days from receipt of the form to mark which of the five options he chooses and return the form to the Mailroom Unit. (*Id.*) If the inmate chooses to appeal, the Mailroom Supervisor sends it to the ADC Central Office Publication Review Committee for a final decision. (*Id*.) Finally, GU 16.5.0 VII(I) says the rejection of a publication may not be challenged through the prison's grievance procedure. (*Id*. at 5.)

    C.    **Rejection of Plaintiff's Book**

On August 12, 2020, the Grimes Unit Mailroom Supervisor received the *Strongest Strong's* concordance addressed to Plaintiff. (Docs. 23-1, 23-3). Because the book exceed the weight and size restrictions, she sent it to the Publications Review Committee for a decision. (*Id*.). The Committee recommended that the book be rejected, and the Warden approved that decision. (*Id*.)

On August 14, 2020, a sergeant gave Plaintiff the Publication Review Form stating the book was rejected because it exceeded the weight and thickness restrictions. (Doc. 26 at 6.) The rejection form clearly explained Plaintiff had ten days to appeal the decision and instructed him to "**[s]end your appeal to the Unit Mailroom** and the mailroom will present it to the Central

4

Office Publication Review Committee." (*Id.*) (emphasis in the original). Plaintiff marked "5" on the "Options" blank of the form indicating that he wanted the book given to a third party at visitation. (*Id.*) Importantly, he did not mark on the form – as he was required to do by GU 16.5.0 § VII and the bolded instructions on the rejection notice – that he wanted to appeal the rejection of his book to the ADC Central Office Publication Review Committee. (*Id.*) Plaintiff then signed and dated the form, gave it to the sergeant, and asked for a copy. (*Id.* at 2-3, 6.) Allegedly, the sergeant "didn't have a copy, nor would he retrieve one." (*Id.* at 3.)

Approximately thirty minutes later, Plaintiff changed his mind and decided to appeal the rejection of his book. (Doc. 26 at 3.) It is undisputed Plaintiff did not contact the Mailroom Supervisor of his desire to appeal as required by GU 16.5.0 and the bolded language on the rejection form. (Doc. 23-1; Doc. 26.) Instead, he sent an Inmate Request Form to Deputy Warden Davis and filed two grievances challenging the rejection of his book and seeking a copy of the rejection form. (Doc. 26 at 7-12.) Both grievances were rejected because, as previously explained, the denial of a publication cannot be challenged through the grievance process. (*Id.*) Deputy Warden Davis, who plays no role in the publication appeal process, responded to Plaintiff's Inmate Request Form by stating: "Visitation is not open and [you] can request a copy of the [rejection] form you signed." (Doc. 26 at 7.)

To satisfy the PLRA, Plaintiff was required to properly comply with Publication Policy GU 16.5.0 by marking on the rejection form that he wanted to appeal and giving that form to the Unit Mailroom within ten working days. And, importantly, those instructions were clearly written in bold on the rejection form Plaintiff admits to receiving and signing. It is undisputed Plaintiff did not comply with those procedures. And, his grievances and request to the Deputy Warden were not the properly way to appeal the rejection of his book. Thus, it is clear Plaintiff

5

did not properly exhaust his administrative remedies. *See Woodford,* 548 U.S. at 90 (administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits").

The next issue is whether Plaintiff can be excused from failing doing so. The PLRA provides that a prisoner must exhaust all "available" administrative remedies. *See* 42 U.S.C. § 1997e(a). In this context, "available" means administrative remedies that are "capable of use for the accomplishment of a purpose." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016); *Booth v. Churner*, 532 U.S. 731, 737-38 (2001). Based on that definition, the Supreme Court has held that administrative remedies are unavailable only in the following three circumstances which "will not often arise": (1) the administrative process "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) the administrative process is "so opaque that it becomes, practically speaking, incapable of use," or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross,* at 1859-60. And, the Court has emphasized there are no "judge-made exceptions" such as "special circumstances" or good cause. *Id.* at 1856.

Plaintiff does not argue the first or second circumstance. Instead, he claims prison officials thwarted his ability to exhaust by failing to give him a copy of the rejection notice within the ten-day appeal period. (Doc. 26.) Plaintiff says that, if he had timely received a copy of that document, he would have known how to properly appeal the rejection of his book. However, Plaintiff's argument overlooks the fact that he had already decided to waive his right to appeal, and Publications Policy GU 16.5.0 does <u>not</u> establish any procedure for prisoners to revoke or rescind that decision. (Doc. 23-2.) Thus, even if Plaintiff had received another copy of the rejection form within the ten day period, nothing on that form would have told him how to rescind

6

his decision.

In *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001), the Eighth Circuit acknowledged the ADC's failure to give grievance forms to a prisoner might be basis for finding administrative remedies unavailable.[2]  But, distinguishable from *Miller*, Plaintiff does <u>not</u> allege Defendants failed to give him the proper forms to appeal the rejection of his book.  Instead, it is undisputed Defendants gave Plaintiff the correct form on August 14, 2014.  After reading the clear instructions on that form, Plaintiff waived his right to appeal which was the end of the administrative process.

I am not unsympathetic to the fact that Plaintiff later changed his mind.  But, nothing in the policy suggests that he could have done so. And, it is well settled that a prisoner's misunderstanding of an administrative procedure does not excuse his failure to properly exhaust administrative remedies.  See *Muhammad v. Mayfield,* 933 F.3d 993, 1001-1002 (8th Cir. 2019) ("procedures need not be sufficiently plain as to preclude any reasonable mistake" as long as an "ordinary prisoner can make sense of what it demands"); *Crowley v. Nailor,* No. 19-1293*,* 783 Fed. Appx. 637, 637-38 (8th Cir. Nov. 4, 2019) (unpublished opinion) (an ADC prisoner's "mistaken belief" on what form he was required to use for an appeal "did not show that the process was unavailable to him"). Based on the record before me, there is no evidence prison officials "thwarted" Plaintiff's exhaustion efforts "through machination, misrepresentation, or intimidation." *Ross,* at 1859-60.  Instead, prison officials gave Plaintiff the chance to appeal, and he declined to do so.  And, the Supreme Court has made it clear there can be no "judge-made

---

[2]  On remand, the district court found ADC officials failed to give forms to the prisoner three years after the deadline for filing a grievance had expired.  Thus, the lack of forms did not make administrative remedies unavailable to the prisoner. *See Miller v. Norris*, 5:99-cv-00491-SWW (E.D. Ark. Sept. 25, 2020), *aff'd*, 88 F. App'x 976 (8th Cir. 2004).

exceptions" for "special circumstances" such as in this case, when a prisoner changes his mind. *Id.* at 1857. Accordingly, I conclude Plaintiff failed to exhaust his available administrative remedies, and I recommend the case be dismissed without prejudice. *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). That being said, I note that the Mailroom Supervisor says in her declaration that she still has Plaintiff's book in her office. (Doc. 23-1). Thus, it may not be too late for Plaintiff to give the oversized book to a third party and find a concordance that complies with the Grimes Unit's size restrictions.

## IV.  CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 23) be GRANTED, Plaintiff's religion claim against Defendants Davis, Young, Glass, and Moss be DISMISSED without prejudice, and this case be closed.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 4th day of May 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE